833 F.2d 1484
 5 U.S.P.Q.2d 1190
 WESCO MANUFACTURING, INC., a New Hampshire Corporation,
Plaintiff-Appellee, Cross-Appellant,
v.
TROPICAL ATTRACTIONS OF PALM BEACH, INC., a Florida
Corporation, Defendant,
Hans Rinehuls, a/k/a Stewart Pithman, Defendant-Appellant,
Cross-Appellee.
 No. 86-5957.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 14, 1987.
 
 Elliot S. Shaw, Peter S. Roumbos, Taplin & Howard, P.A., West Palm Beach, Fla., for defendant-appellant, cross-appellee.
 Douglas H. Morford, Jacksonville, Fla., Raymond E. Vickery, Jr., McLean, Va., for plaintiff-appellee, cross-appellant.
 Appeals from the United States District Court for the Southern District of Florida.
 Before HILL and VANCE, Circuit Judges, and PROPST*, District Judge.
 VANCE, Circuit Judge:
 
 
 1
 This appeal involves claims of unfair competition and breach of contract. The district court entered judgment for the plaintiff, and both parties appealed.
 
 I.
 
 2
 Plaintiff Wesco Manufacturing, Inc. ("Wesco") manufactures and sells pith-style helmets under the trademark "Sun Fari." In 1983 Wesco entered into an agreement with Hans Rinehus ("Rinehuls") regarding the sale of Wesco pith helmets in Florida. Rinehuls and Robert Russo operated as a partnership known as Tropical Attractions. Under the agreement with Wesco, Rinehuls and Russo were to be the distributors of Wesco pith helmets in Florida. Wesco authorized Rinehuls and Russo to sell its pith helmets under the mark "Sur Fari" on the condition that only helmets purchased from Wesco under the distribution agreement would be so labeled.
 
 
 3
 At some point in 1984 Rinehuls and Russo ceased to be partners. Rinehuls, however, continued to market Wesco pith helmets, and on May 1, 1984 he formed a Florida corporation, Tropical Attractions of Palm Beach, Inc. ("Tropical Attractions"), to carry on the business. Rinehuls and Richard Freedman were Tropical Attractions' only shareholders, with Rinehuls owning 51 percent of the outstanding common stock. An organizational meeting was held on July 1, 1984, and Rinehuls was elected chairman, president and secretary of the corporation. The corporation's records show no further meetings or actions by the corporation.
 
 
 4
 In September, 1985 Wesco had not received payment on $36,884 worth of helmets it had delivered to Tropical Attractions. Wesco sent Tropical Attractions a final demand letter stating that unless payment was made, Tropical Attractions would be dropped as a Wesco distributor and would no longer be authorized to use Wesco's trade names or advertising brochures. Tropical Attractions did not make the required payments, and was terminated as a Wesco distributor. Tropical Attractions, however, continued to sell pith helmets under the labels "Sur Fari" and "Surfari." In addition, it ran advertisements using language identical to that found in Wesco ads.
 
 
 5
 In December, 1985 Wesco brought this action against Tropical Attractions and Rinehuls for unfair competition, trademark infringement and breach of sales contract. After a non-jury trial, the district court awarded Wesco $36,884 on its breach of contract claim. In addition, the court found that Tropical Attractions' continued use of the "Sur Fari" label and Wesco's advertising materials constituted unfair competition at common law and a violation of the Lanham Act, 15 U.S.C. Sec. 1125(a), and Fla.Stat.Ann. Sec. 495.151. The court enjoined Tropical Attractions from further use of the mark "Sur Fari" and Wesco advertising materials, but did not award damages. As for Tropical Attractions' use of the mark "Surfari," the district court found that "Surfari" was sufficiently different from Wesco's "Sun Fari" so as to preclude liability for unfair competition and under the Lanham Act. Finally, the court held that to the extent its judgment was binding on Tropical Attractions, it was binding on Rinehuls personally. Rinehuls is thus bound by the court's injunctive relief, and is personally liable for the $36,884 judgment. This appeal followed.
 
 II.
 
 6
 Rinehuls contends that the district court erred when it held him personally liable for Tropical Attractions' debt. On cross-appeal, Wesco contends that the court erred by refusing to award damages for Tropical Attractions' violation of the Lanham Act and by finding that the mark "Surfari" is not confusingly similar to Wesco's "Sun Fari."
 
 A.
 
 7
 We first consider Rinehuls' appeal. Rinehuls argues: (1) that there was not a sufficient basis under Florida law for piercing the corporate veil; and (2) that even if such a basis were to exist, Rinehuls' personal liability was not at issue because Wesco failed to name Rinehuls as a defendant in its breach of contract claim. Rinehuls' first argument is without merit. Rinehuls used Tropical Attractions as a corporate shell to defraud his creditors. The corporation was thinly capitalized at best, and Rinehuls admits that it is now "basically defunct."[1] In addition, what corporate records there are show no meetings or actions by the corporation other than its initial organizational meeting in July 1984. Tropical Attractions was a sham, and there was a sufficient basis for disregarding its existence and holding Rinehuls personally liable. See Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla.1984).[2]
 
 
 8
 Rinehuls' second argument deserves more attention. The breach of contract count of Wesco's complaint makes no mention of Rinehuls. It simply recites that "Defendant Tropical owes Plaintiff $36,884.10, that is due with interest since October 18, 1985...." Wesco's demand for judgment asks that "judgment be entered against Defendant, Tropical Attractions of Palm Beach, Inc., on the open account balance owed by said Defendant to Plaintiff, together with interest thereon." In short, nothing in the complaint suggested that Wesco was seeking to recover from Rinehuls personally on its breach of contract claim.[3]
 
 
 9
 Wesco nonetheless argues that the issue of Rinehuls' personal liability for Tropical Attractions' contract debt was tried by implied consent under Fed.R.Civ.P. 15(b). At trial Wesco's attorney, without objection, introduced in evidence the corporate records of Tropical Attractions and questioned Rinehuls regarding the failure to follow corporate formalities, his relationship to the corporation, the corporation's present status, and the succession of business entities through which he had operated. Wesco contends that Rinehuls' failure to object to the introduction of this evidence signified his consent to the trial of the issue of personal liability.[4] We disagree.
 
 
 10
 A party cannot be said to have implicitly consented to the trial of an issue not presented by the pleadings unless that party should have recognized that the issue had entered the case at trial. Jimenez v. Tuna Vessel "Granada", 652 F.2d 415, 421 (5th Cir. Unit A 1981); 6 C. Wright & A. Miller, Federal Practice and Procedure, Sec. 1493, at 462 (1971). Often such consent can be inferred from the failure to object to the introduction of evidence relevant to an unpleaded issue. See, e.g., Apple Barrel Prods. Inc. v. Beard, 730 F.2d 384, 388-89 (5th Cir.1984). On the record before us, however, we cannot say that Rinehuls should have known that his personal liability for Tropical Attractions' contract debt had become an issue. The evidence regarding Tropical Attractions and Rinehuls' relationship to it might also have been relevant to other issues raised in the complaint, namely Rinehuls' liability under Wesco's other claims. The introduction of evidence arguably relevant to pleaded issues cannot serve to give a party fair notice that new issues are entering the case. Jimenez, 652 F.2d at 421; International Harvester Credit Corp. v. East Coast Truck, 547 F.2d 888, 890 (5th Cir.1977). Indeed, it appears that even Wesco's attorney did not think that Rinehuls' personal liability was at issue. At the close of evidence counsel for each of the parties was asked to summarize the relief they were requesting. With regard to its contract claim Wesco's attorney responded: "I believe you should enter a judgment against the corporate defendant in the amount of $36,884.10 plus interest, for hats which were sold, and were not paid for." In short, we conclude that Rinehuls' liability for Tropical Attractions' contract debt was not at issue. We therefore reverse that part of the district court's judgment holding Rinehuls personally liable for the debt.
 
 B.
 
 11
 Turning next to Wesco's appeal, we first address its contention that the district court erred by not awarding damages on its trademark and unfair competition claims. Although the court found that Tropical Attractions' use of the "Sur Fari" mark and Wesco's advertising materials was a violation of the Lanham Act, 15 U.S.C. Sec. 1125(a), Fla.Stat.Ann. Sec. 495.151 and constituted unfair competition at common law, it concluded that Wesco had not offered sufficient proof of actual damages or Tropical Attractions' sales. On the issue of damages, Wesco had introduced Tropical Attractions' income tax return for 1985, showing gross sales for that year of $139,276.64. It also had introduced evidence that Tropical Attractions had made infringing sales in 1986.
 
 
 12
 In Rickard v. Auto Publisher, Inc., 735 F.2d 450, 457-58 (11th Cir.1984), we held that the relief set forth in section 35 of the Lanham Act, 15 U.S.C. Sec. 1117(a), was the appropriate remedy in an action under section 43(a) of the Act, 15 U.S.C. Sec. 1125(a). The measure of recovery under section 35 includes the defendant's profits, any damages sustained by the plaintiff, and costs. 15 U.S.C. Sec. 1117(a). In addition, a court "may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount," and may award attorneys' fees in exceptional cases. Id. Wesco does not contend that it sustained any damages as a result of Tropical Attractions' infringement. Rather, it seeks an accounting to recover Tropical Attractions' profits.
 
 
 13
 A plaintiff need not demonstrate actual damage to obtain an accounting of an infringer's profits under section 35 of the Lanham Act. Maltina Corp. v. Cawy Bottling Co., Inc., 613 F.2d 582, 585 (5th Cir.1980); Springs Mills, Inc. v. Ultracashmere House, Ltd., 724 F.2d 352, 356 (2nd Cir.1983). It is enough that the plaintiff proves the infringer's sales. The burden then shifts to the defendant, which must prove its expenses and other deductions from gross sales. Maltina, 613 F.2d at 586; 15 U.S.C. Sec. 1117(a). We must therefore decide whether Wesco has offered sufficient proof of Tropical Attractions' sales to require an accounting under section 35 of the Lanham Act.
 
 
 14
 Wesco argues that Tropical Attractions' income tax return for 1985 combined with evidence of infringing sales activity in 1986 constituted sufficient proof of infringing sales during 1985 and 1986 to require an accounting of profits for both years. We agree. Tropical Attractions' 1985 tax return is clearly sufficient proof of its sales during that year. Although the exact amount of infringing sales cannot be determined from the tax return, exactness is not required. Tropical Attractions is in the best position to ascertain exact sales and profits, and it bears the burden of doing so in an accounting. See Oral-B Laboratories, Inc. v. Mi-Lor. Corp., 810 F.2d 20, 26 (2nd Cir.1987) (reversing and remanding for an accounting even though exact sales figure not proven). Wesco is also entitled to an accounting for profits from infringing sales made during 1986. While Wesco did not produce any evidence of the amount of Tropical Attractions' 1986 sales, it did introduce evidence of infringing sales activity. This evidence, when considered with evidence of Tropical Attractions' 1985 sales is sufficient to require an accounting of 1986 profits. Again, only Tropical Attractions can ascertain exact sales and profits data for 1986. We therefore reverse the district court's denial of an accounting and remand for determination of the profits Tropical Attractions derived from infringing sales during 1985 and 1986.[5]
 
 C.
 
 15
 Wesco also challenges the district court's finding that the mark "Surfari" is not confusingly similar to Wesco's "Sun Fari." Wesco contends that the district court failed to consider the full range of factors necessary to determine the likelihood of confusion and that when all the relevant factors are considered the court's finding is clearly erroneous.[6]
 
 
 16
 To determine whether a mark is likely to cause confusion in violation of 15 U.S.C. Sec. 1125(a), a court must consider a number of factors: (1) the nature of the plaintiff's mark; (2) the similarity of the marks at issue; (3) the similarity of the products the marks represent; (4) the similarity of the parties' retail outlets and customers; (5) the nature of the parties' advertising; (6) the defendant's intent; and (7) the extent of actual confusion. See Ambrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1538 (11th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987); Conagra, Inc. v. Singleton, 743 F.2d 1508, 1514 (11th Cir.1984); Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 840 (11th Cir.1983). The extent to which two marks are confusingly similar cannot be assessed without considering all seven factors to ensure that the determination is made in light of the totality of the circumstances. Here, however, the district court ignored six of the seven factors. In finding that "Surfari" is not confusingly similar to "Sun Fari" the court stated:
 
 
 17
 [T]he word "Surfari" is not bifurcated as is "Sun Fari" in plaintiff's exhibits 3 and 6. No internal upper case letters are used in ["Surfari"]. The script in ["Surfari"] is noticeably different from that used in ["Sun Fari"]. As it appears in plaintiff's exhibit 19, the "Surfari" mark is not substantially different from the word "safari," with which pith helmets are commonly associated.
 
 
 18
 The court incorrectly focused solely on the degree of visual similarity between the two marks. "Equally as significant as the general appearance of the trademarks is their use in the public market, their effect upon dealers, purchasers and other competitors, the relationship of the trademark's owners, ... how they develop their business, and whether they are acting bona or mala fide." Sun-Fun Prods., Inc. v. Suntan Research & Dev. Inc., 656 F.2d 186, 189 (5th Cir. Unit B 1981) (quoting 3 R. Callman, The Law of Unfair Competition Trademarks and Monopolies Sec. 82.2 (3d ed. 1969)).
 
 
 19
 A district court's failure to consider all the factors relevant to the issue of whether two marks are confusingly similar does not necessarily constitute reversible error. Indeed, we may affirm an ultimate finding on the issue of confusion that is not clearly erroneous, even when the district court fails to consider all seven factors. See, e.g., University of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535, 1542-43 (11th Cir.1985); Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1163-64 & n. 3 (11th Cir.1982).[7] Here, however, the district court completely disregarded the proper analysis, and we are left with an insufficient basis for determining whether its finding that "Surfari" is not confusingly similar to "Sun Fari" is clearly erroneous. We therefore vacate that portion of the district court's judgment and remand the case for proceedings consistent with this opinion.
 
 
 20
 REVERSED in part, VACATED in part and REMANDED with instructions.
 
 
 
 *
 Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Rinehuls has formed another corporation, Innovative Headwear, and continues to sell pith helmets
 
 
 [2]
 In Sykes the Florida Supreme Court held that the corporate veil should not be pierced absent a showing of "improper conduct." 450 So.2d at 1121. Although the court did not define the term "improper conduct," it cited with approval language from earlier Florida cases suggesting that the concept is broad enough to encompass the conduct involved here. See id. at 1119-21
 
 
 [3]
 Wesco did ask for relief against Rinehuls in the other counts of the complaint for violations of the Lanham Act, 15 U.S.C. Sec. 1125(a), and Fla.Stat.Ann. Sec. 495.151 and for unfair competition at common law
 
 
 [4]
 Under Rule 15(b) the pleadings need not be amended to conform to the evidence. An issue that has been tried by implied consent will be treated as if it had been raised in the pleadings. American Standard Credit, Inc. v. National Cement Co., 643 F.2d 248, 257 n. 4 (5th Cir. Apr. 1981)
 
 
 [5]
 Wesco also contends that the district court erred by not awarding it attorneys' fees. Section 35 of the Lanham Act allows an award of reasonable attorneys' fees in "exceptional cases." 15 U.S.C. Sec. 1117(a). The district courts have broad discretion in awarding damages under section 35, Burger King Corp. v. Mason, 710 F.2d 1480, 1495 (11th Cir.1983), cert. denied, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984), and we cannot say that the court abused that discretion in denying Wesco's claim for attorneys' fees
 
 
 [6]
 A district court's finding on the issue of whether trademarks are confusingly similar to one another is a finding of fact which will not be disturbed unless clearly erroneous. Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 839-40 & n. 16 (11th Cir.1983)
 
 
 [7]
 There has been some confusion over the effect of a district court's failure to use the proper analysis in determining the likelihood of confusion. Our decisions in Laite and Safeway Stores suggest that such an error cannot by itself constitute reversible error. See also Sun Banks of Florida, Inc. v. Sun Fed. Sav. & Loan Ass'n, 651 F.2d 311, 314 (5th Cir.1981). Other decisions, however, suggest that the failure to use the proper analysis is a legal error which is subject to review apart from whether the court's ultimate finding on the confusion issue is clearly erroneous. See, e.g., Ambrit, 812 F.2d at 1538-39; Jellibeans, 716 F.2d at 840; Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 594-95 & n. 4 (5th Cir.1985)
 Whether two marks are confusingly similar is a question of fact, and ordinarily we should limit our inquiry to whether the district court's ultimate finding on the issue is clearly erroneous. In some cases, however, the incompleteness of the district court's findings may preclude such an inquiry, necessitating a remand to the district court for the proper analysis.