864 F.2d 734
 Emma F. GILMERE, Individually and as Administratrix of the
Estate of Thomas E. Patillo and for the benefit of
his next of kin, Plaintiff-Appellant,
v.
CITY OF ATLANTA, GEORGIA, R.C. Sampson, and Carroll Charles
Craig, Defendants- Appellees.
 No. 87-8614.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 30, 1989.
Rehearing and Rehearing In Banc Denied March 6, 1989.
 
 J.M. Raffauf, Decatur, Ga., for plaintiff-appellant.
 Mary Carole Cooney, Marva Jones Brooks, George R. Ference, Atlanta, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before FAY and CLARK Circuit Judges, and GONZALEZ*, District judge.
 GONZALEZ, District Judge:
 This is the third time this action has been before us.[1] Appellant Emma Gilmere, as administratix of her brother's estate, brought this suit against appellees R.C. Sampson, Carroll Charles Craig, their supervisors, and the City of Atlanta, Georgia, under 42 U.S.C. Sec. 1983 for violations of her brother's fourth, eighth and fourteenth amendment rights and under state tort law. Sampson and Craig are police officers in the City of Atlanta who beat, shot, and killed Gilmere's brother, Thomas Patillo.
 After a non-jury trial, the district court found Craig, Sampson and the City of Atlanta liable for violating Patillo's substantive due process rights and found for the defendants on plaintiff's state law claims for false arrest, false imprisonment and assault and battery.[2] The court awarded $1,000.00 in general damages and $4,000.00 in punitive damages against Craig and Sampson for the beating and $20,000.00 in general damages against Sampson and the City of Atlanta for the shooting and death of the decedent. The court found that punitive damages for the shooting were not warranted. Gilmere was also awarded costs and attorney's fees.
 Sampson and the City of Atlanta filed an appeal. After a rehearing en banc, this court reversed the finding of liability as to the City of Atlanta and affirmed the liability of Craig and Sampson. In addition, we found that the beating and shooting of the decedent violated his fourth amendment interest in bodily security and remanded plaintiff's state law claims for reconsideration in light of that finding. We also vacated the award of costs and attorney's fees and directed reconsideration of that award.
 On remand, the district court declined to award additional damages for the fourth amendment violations. The district court reasoned that the $25,000.00 previously awarded provided adequate compensation for the actual injuries suffered by the decedent and an award of additional damages would result in a double recovery. The court also denied additional recovery for appellant's state tort claims on the same ground. Appellant was awarded $17,790.00 plus interest for costs and attorney's fees.
 Emma Gilmere appeals, contending that the district court erred in not awarding state statutory damages for wrongful death or similar compensatory damages for the deprivation of life. Gilmere also argues that the trial court erred in not awarding additional damages on remand for the violations of the fourth amendment and state tort law. The other issues on this appeal concern the award of attorney's fees and the liability of the City of Atlanta for the judgment. We shall consider each issue separately below.
 DAMAGES
 Appellant argues that she is entitled to recover damages for the full value of decedent's life pursuant to Georgia law. The measure of damages for wrongful death actions under Georgia law is determined by statute. See Ga.Code Ann. Sec. 51-4-1. The Georgia wrongful death statute permits recovery by the personal representative on behalf of the next of kin for the full value of the life of the decedent. Ga.Code Ann. Sec. 51-4-5. Presumably, appellant believes that the amount of damages awarded under the Georgia wrongful death statute would far exceed the $20,000.00 awarded by the district court for the shooting and death of the decedent.
 Appellant makes several arguments to support her claim for state statutory damages. First, she contends that the complaint properly raised a claim under the Georgia wrongful death statute, or, alternatively, that the state wrongful death claim was tried by the implied consent of the parties. Appellant also argues that under 42 U.S.C. Sec. 1988, the district court was required to look to state law to determine the measure of damages for the section 1983 claim.
 I.
 After a careful review of the record, we conclude that appellant is not entitled to recover state statutory damages for the death of her brother. First, the complaint does not allege a pendent state cause of action for wrongful death. Count I of the complaint alleges that the death of Thomas Patillo was caused by the appellees and that their conduct deprived Patillo "of his rights, privileges and immunities guaranteed him under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, Title 42 U.S.C. 1983 and 1988, to remain free from unlawful death, intrusions upon his property and person, physical abuse, cruel and unusual punishment and deprivation of his life and liberty without due process of law." (Complaint, p 23). The complaint goes on to demand recovery of the full value of decedent's life, and funeral and medical expenses and damages.
 While it is true that the damages requested are identical to the damages recoverable under the Georgia wrongful death statute, there is no indication in the complaint that appellant intended to raise a pendent claim for wrongful death. The absence of such a claim is made even more conspicuous by the second and third causes of action of the complaint. Those counts specifically allege "further cause of action under the constitution and laws of the State of Georgia" for false imprisonment and assault and battery. In contrast, the first count of the complaint alleges and seeks recovery only for the deprivation of the decedent's constitutional rights.
 Appellant's own pleadings support the conclusion that the state wrongful death claim was never raised. In her Motion to Amend Complaint, Gilmere made the following statement: "This action is brought pursuant to 42 U.S.C. 1983 and 1988 alleging violations of civil rights and pertinent state causes of action for assault and battery and false imprisonment." Appellant moved to amend the complaint to add a cause of action for false arrest. Nowhere does appellant allege a pendent state claim for wrongful death. The district court did not err in finding that the issue of wrongful death was not properly raised prior to trial.
 Appellant claims that even if the complaint did not properly raise a wrongful death claim, that issue was tried by the implied consent of the parties. As support, appellant points to her Proposed Findings of Fact and Conclusions of Law filed before trial which include wrongful death as one of the claims before the court. Appellant also points to the arguments of her counsel at trial that she was pursuing a claim for wrongful death.
 "A party cannot be said to have implicitly consented to the trial of an issue not presented by the pleadings unless that party should have recognized that the issue had entered the case at trial." Wesco Manufacturing, Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1486 (11th Cir.1987) (citations omitted). "Often such consent can be inferred from the failure to object to the introduction of evidence relevant to an unpleaded issue." Id.
 On the record before us, we cannot say that appellees implicitly consented to try the issue of wrongful death. In objecting to the introduction of evidence of funeral expenses, counsel for appellees specifically stated that "there is no allegation in the complaint requesting a prayer for damages for wrongful death. My understanding is this is purely an action for violation of civil rights pursuant to 42 U.S.C. 1983 and 1988, and then the court granted an amendment to allow a false imprisonment pursuant to the state civil section. There is no wrongful death action pending in this court." Counsel for appellant then argued in response that he had raised a wrongful death claim. The district court admitted the evidence, stating that she would consider at a later date what damages could be recovered. The district court ultimately held that appellant could not recover under a claim for wrongful death. We affirm, noting that the issue was neither expressly nor implicitly tried.
 II.
 Gilmere argues that the district court erred in not applying the Georgia wrongful death statute to determine the proper amount of damages to be awarded for her Sec. 1983 claim for deprivation of life without due process of law.[3] For the reasons which follow, we conclude that the district court did not err in refusing to award the full amount of damages recoverable under state law.
 The district court recognized that state tort law provides the appropriate starting point for the inquiry into the proper measure of damages under Sec. 1983. See Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The court then found that an award under state law for the full value of Patillo's life would overcompensate his next of kin because none were dependent upon Patillo for financial support. The court determined from the evidence that $20,000.00 would adequately compensate Patillo's estate for the injuries he suffered in connection with the violation of due process caused by the shooting. The injuries included physical harm including death, emotional suffering and humiliation.
 Gilmere contends, and the dissent agrees, that the district court should have awarded the Georgia statutory damages for wrongful death, i.e., the full value of Patillo's life as defined by Georgia law, because there is no suitable federal rule to define the measure of damages under Sec. 1983. However, contrary to the dissent's argument, neither 42 U.S.C. Sec. 1988 nor our predecessor court's decision in Brazier v. Cherry, 293 F.2d 401 (5th Cir.1961), require federal courts to apply a state law measure of damages as a remedy for a deprivation of constitutional rights.
 "Title 42 U.S.C. Sec. 1988 authorizes courts to look to the common law of the States where this is 'necessary to furnish suitable remedies' under Sec. 1983." Carey, 435 U.S. at 258, n. 13, 98 S.Ct. at 1049, n. 13, 55 L.Ed.2d at 260, n. 13. Federal courts are to turn to state law in order to fill gaps which may exist in federal law. See Brazier, 293 F.2d at 409. The resort to state law "will permit the full effectual enforcement of the policy sought to be achieved by the [civil rights] statutes." Id. at 408. Where federal law is sufficient to carry the policies of the civil rights statutes into effect, resort to state law is not necessary. Id.
 In Brazier, the Fifth Circuit considered the district court's dismissal of a Sec. 1983 action brought by survivors of an individual who had been killed by Terrell County, Georgia police officers. The appellate court turned to state law to hold that a claim under Sec. 1983 for injuries would survive the death of the victim. Georgia law provided for survival of the decedent's cause of action as well as a cause of action for injury inflicted upon the survivors. Federal law did not provide for such survival. The Brazier court held that the policies behind the civil rights statutes would be fully implemented by resorting to state law to allow both classes of victims (the decedent and his survivors) to recover for injuries in an action under Sec. 1983. Id. at 409.
 The present action differs from Brazier in one important respect: the plaintiff in the present case did not seek damages for injuries to the decedent's survivors. As discussed at length in Part I, supra, appellant's complaint sought relief for the injuries suffered only by her brother, not by his survivors. The issues before this court is this: what measure of damages must the district court utilize in fashioning a remedy for the constitutional deprivations suffered by the decedent?[4]
 "Compensatory damages for deprivation of a federal right are governed by federal standards, as provided by Congress in 42 U.S.C. Sec. 1988...." Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 239, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969). The Supreme Court has construed Sec. 1988 to mean that "both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes." Id. at 240, 90 S.Ct. at 403, 24 L.Ed.2d 386. The district court's task is to "adapt[ ] common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right." Carey, 435 U.S. at 258, 98 S.Ct. at 1049, 55 L.Ed.2d 252.
 The focus of any award of damages under Sec. 1983 is to compensate for the actual injuries caused by the particular constitutional deprivation. Memphis Community School District v. Stachura, 477 U.S. 299, 106 S.Ct. 2537, 2544, 91 L.Ed.2d 249 (1986). The amount of damages to be awarded should be grounded in a determination of the plaintiff's actual losses. Id. The Supreme Court has stated that Sec. 1983 remedies are "supplementary to any remedy any State might have," and "have no precise counterpart in State law." Wilson v. Garcia, 471 U.S. 261, 272, 105 S.Ct. 1938, 1945, 85 L.Ed.2d 254 (1985) (citations omitted). The Court added that "it is 'the purest coincidence' ... when state statutes or the common law provide for equivalent remedies...." Id. (citations omitted). Thus, there is no requirement that a state remedy be employed to compensate for a violation of a federal interest. In fact, the Court has noted that under Sec. 1988, "resort to State law ... should not be undertaken before principles of federal law are exhausted." Id. at 268, 105 S.Ct. at 1943, 85 L.Ed.2d 254.[5]
 Federal law provides for compensation for injuries caused by a constitutional deprivation, Stachura, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249, and allows the imposition of punitive damages even in cases where such recovery may not be made under state law. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The courts are charged with the duty of evaluating the principles of damages which have evolved within the common-law and fashioning a remedy appropriate to the injury.
 The dissent argues that by not applying the state measure of damages for wrongful death, we are casting the district courts to sea without an anchor and are inviting arbitrary, subjective valuations of human life. We disagree. Although the principles of compensation may be difficult to apply to particular cases, as the Supreme Court has recognized, courts "are capable of making the types of judgment concerning causation and magnitude of injury necessary to accord meaningful compensation for invasion of [constitutional] rights." Carey, 435 U.S. at 259, 98 S.Ct. at 1050, 55 L.Ed.2d 252 quoting Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 409, 91 S.Ct. 1999, 2011, 26 L.Ed.2d 619 (1971) (Harlan, J., concurring in judgment).
 
 
 1
 Furthermore, applying a federal standard of damages for injuries suffered by a decedent will promote consistency in the type and amount of damages awarded. Were we to follow the dissent's rule and award the damages provided in the state wrongful death statute, there would be three separate measures of damages for the unconstitutional deprivation of life in this circuit: the damages permitted by the wrongful death statutes of Alabama, Florida and Georgia.[6] Under that scenario, it is not inconceivable that a plaintiff in one state would be awarded substantially more damages under her state's wrongful death statute than another plaintiff who happens to live in a state with a different measure of damages for wrongful death. Such a result would not only lead to inconsistent awards, it could be prohibited by Sec. 1988.[7]
 
 
 2
 For the above-stated reasons, we hold that the district court did not err in refusing to award the state wrongful death measure of damages to compensate for the violation of the decedent's constitutional rights. We now turn to the amount of the award.
 
 
 3
 The district court determined on the evidence in the record that an award of $20,000.00 would provide adequate compensation for the injuries suffered by the decedent as a result of the shooting. The court also determined that the record did not support an award of punitive damages against appellee Sampson.
 
 
 4
 The district court has a great deal of discretion in deciding the level of damages to be awarded. Stallworth v. Schuler, 777 F.2d 1431 (11th Cir.1985). "In reviewing the amount of damage awards, this court is generally limited to the question of whether the trier of fact abused its discretion." Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540, 1552 (11th Cir.1987). "Although the award was small, it was not 'unconscionably inadequate,' therefore, we may not disturb the award on appeal." Id., quoting Kramer v. Keys, 643 F.2d 382, 386 (5th Cir. Unit A Apr. 1981) (citation omitted from original).
 
 
 5
 The dissent argues that the amount awarded by the district court was inadequate in two respects. One, it shocks the conscience of the court. Two, the award does not adequately consider the policy of deterrence inherent in the civil rights statutes.
 
 
 6
 In response we cite the identical language relied upon by the dissent. As the Supreme Court has recognized, "Sec. 1983 presupposes that damages for actual harm ordinarily suffice to deter constitutional violations." Stachura, 477 U.S. at 309, 106 S.Ct. at 2544, 91 L.Ed.2d 249. Because we find that the district court did not abuse its discretion in determining the amount of damages, we find that the principles of deterrence are adequately served by the amount awarded. Accordingly, we affirm the district court's award of damages.
 
 III.
 
 7
 We likewise find no error in the district court's refusal to award additional damages for the deprivation of Patillo's fourth amendment right to bodily security. The district court found that the injuries suffered by Patillo as a result of the fourth amendment violation were identical to the injuries which gave rise to Patillo's substantive due process claim. The court reasoned that it could not award additional damages simply because the same injuries reflected separate constitutional violations. As the Supreme Court held in Stachura, compensatory damages in Sec. 1983 cases are to be based upon the actual injuries caused by the deprivation of a constitutional right and not upon the abstract "value" or "importance" of the right in question. Stachura, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249. Given that the district court found that the separate violations of the fourth and fourteenth amendments resulted in identical injuries, it properly denied additional compensation for the fourth amendment violations.
 
 
 8
 Similarly, we cannot find that the district court erred in refusing to award additional damages for the false arrest, false imprisonment, and assault and battery on Patillo. The court found that the beating and shooting of Patillo gave rise to liability for those torts as well as liability under Sec. 1983. However, the injuries caused by the state torts were identical to the injuries suffered as a result of appellees' unconstitutional conduct: physical harm, emotional suffering and humiliation. The district court's refusal to award additional damages for identical injuries was not in error. For the foregoing reasons, the district court's award of damages is affirmed.
 
 ATTORNEY'S FEES
 
 9
 Appellant Emma Gilmere also appeals the award of costs and attorney's fees made by the district court. She contends that the district court abused its discretion in failing to make an adequate award of attorney's fees.
 
 
 10
 The proceedings over attorney's fees in this case violates the idea that "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). The district court has twice considered the issue of attorney's fees. As we discuss below, the issue must go before the district court once more.
 
 
 11
 In the first award, the court granted $28,464.00 for reasonable attorney's fees.[8] The costs awarded totaled $8,606.40. Upon the en banc rehearing, this court vacated the award of fees and costs and remanded for further consideration in light of the issues and proceedings before us.
 
 
 12
 On remand, the district court reduced the attorney's fee award by 25 percent and refused to allow recovery of costs for appellant's expert witness. The court reasoned that because the issue of municipal liability was reversed, appellant's success was substantially limited and that she was not entitled to full recovery of attorney's fees and costs. See Hensley, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (critical factor of fee award is degree of success obtained). The district court also declined to enhance the amount of fees awarded to account for the contingent nature of the fee, on the ground that this was not an "exceptional case" where the need for enhancement is "readily apparent." See Pennsylvania v. Delaware Valley Citizens' Council, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).
 
 
 13
 The district court also awarded fees and costs for counsel's work on the appeal and on remand. In a prior order, appellant received $2,500.00 in attorney's fees against Sampson for the appeal. The court refused to reconsider that award, but did award $3,523.00 for costs of the trial transcript. The court also awarded appellant $2,500.00 for attorney's fees incurred on remand. In total, after remand, appellant was awarded $17,790.00 in attorney's fees and $7,119.41 in costs against Craig and Sampson and $5,000.00 in attorney's fees and costs against Sampson.
 
 
 14
 On this appeal, appellant objects to the reduction of fees made by the district court. She also argues that the fee award was inadequate in light of the evidence.
 
 
 15
 The district court's determination of a reasonable fee will not be upset absent an abuse of discretion. Popham v. City of Kennesaw, 820 F.2d 1570, 1581 (11th Cir.1987). The normal procedure for determining an award of attorney's fees is to "calculate the lodestar amount--the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Popham, 820 F.2d at 1578. "However, if the plaintiff obtained only 'partial or limited success,' the court may reduce the lodestar amount if it believes that amount is excessive in relation to the plaintiff's relief." Id. at 1578-79.
 
 
 16
 The district court reduced the original award of attorney's fees by 25 percent and refused to award costs for the expert witness because Gilmere failed to prevail on her theory of municipal liability. The court found that a large portion of the trial and the expert's testimony was directed at establishing the City's liability. The facts and legal theories necessary to establish the City's liability were distinctly different from the facts and theories necessary to establish the liability of Craig and Sampson. The district court did not abuse its discretion in reducing the award of attorney's fees and costs.
 
 
 17
 We also find that the trial court did not abuse its discretion in not awarding a fee enhancement. Prior to the court's second order on attorney's fees, the Supreme Court decided Delaware Valley Citizens' Council, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585. Enhancement may be appropriate in a rare case where there is a risk of non-recovery of a fee in the case. Id. However, "enhancement will be awarded only where it is shown that such enhancement is necessary to assure the availability of counsel." Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1302 (11th Cir.1988). Based on the evidence in the record, the district court correctly declined to award an enhancement.
 
 
 18
 Furthermore, the district court did not abuse its discretion in calculating the amount of hours reasonably expended in the trial of this case. The court carefully reviewed the hours which fee counsel claimed were expended and precisely explained which hours were disallowed and showed why an award of those hours was inappropriate. See Norman, 836 F.2d at 1304. The hours allowed for the trial were reasonable and within the court's discretion.
 
 
 19
 Calculating the hours expended is only one-half the analysis in considering an award of attorney's fees. The court must also determine the reasonable hourly rate in order to estimate the value of the lawyer's services. Id. at 1299. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id.
 
 
 20
 In calculating the hourly rate by which appellant's attorney's fees were determined, the district court considered the customary fee in similar cases, the amount involved and the results obtained, and the experience, reputation and ability of counsel. These standards were set forth in the leading cases at the time the award was made. See Copper Liquor, Inc. v. Adolph Coors Co., 624 F.2d 575, 583 (5th Cir.1980); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). Although the standard for setting a reasonable hourly rate has evolved somewhat since Johnson, the analysis made by the district court does not differ greatly from the analysis set forth in our opinion in Norman, 836 F.2d 1292.
 
 
 21
 Regardless of the standard by which the hourly fee was determined, we think that $40.00 an hour for Mr. Raffauf's time is inadequate compensation. We do not lightly upset the district court's findings. However, the hourly fee awarded in this case so greatly contradicts our own "knowledge and experience concerning reasonable and proper fees," that we find the trial court abused its discretion in determining the hourly rate. See Norman, 836 F.2d at 1303 (trial or appellate court is an expert on issue of fees and may form its own independent judgment on reasonable and proper fees).
 
 
 22
 We cannot give meaningful review to the district court's award for the appeal and remand. The orders granting these fees fail to set forth either the hourly rate or the number of hours the court considered reasonably expended at these stages of litigation. See Norman, 836 F.2d at 1304. We note that we do not take issue with the district court's decision not to award the full amount requested. However, for the reasons just given, we are unable to review the award. In light of the foregoing discussion, we must vacate the award of attorney's fees made by the district court.
 
 LIABILITY OF THE CITY OF ATLANTA
 
 23
 Appellant persists in her opinion that the City of Atlanta is liable for all damages, costs and attorney's fees awarded in this case. Pursuit of this argument on this appeal is frivolous in light of our earlier decision in which we found no liability on the part of the City. See Gilmere, 774 F.2d at 1502-04. The finding of no liability as to the City is the law of the case and appellant may not pursue a judgment against the City.CONCLUSION
 
 
 24
 In conclusion, we affirm the damages awarded against R.C. Sampson and Carroll Charles Craig. The award of attorney's fees is vacated and remanded for reconsideration of a reasonable hourly rate and for further findings as to the proper award for fees and costs for the appeal and remand.
 
 
 25
 AFFIRMED in part, VACATED in part and REMANDED.
 
 
 26
 CLARK, Circuit Judge, concurring in part and dissenting in part:
 
 
 27
 Believing that the majority overlooked or misconstrued binding precedent leading it to err in holding "there is no requirement that a state remedy be employed to compensate for a violation of a federal interest" in a wrongful death case brought pursuant to 42 U.S.C. Sec. 1983, I respectfully dissent from Part II of the damages portion of the opinion and would reverse the district court.
 
 I. THE ISSUE
 
 28
 The issue in this case is as follows: When a district court finds that Atlanta, Georgia police officers violated a person's federal constitutional rights in killing him during an arrest, to what law does the district court look in assessing damages to the estate of the decedent, leaving as his only survivors several brothers and sisters? Binding circuit precedent as well as a proper reading of Supreme Court precedent requires a district court in Georgia to look to Georgia Code Secs. 51-4-5(a) and 51-4-1(1)[1] in assessing damages.
 
 II. THE DISTRICT COURT ORDERS
 
 29
 The first district court order with respect to damages was entered June 21, 1982. Commencing at page 22 of the order the district court discussed "Damages for Violations of Section 1983." The district court posed the question of whether a decedent's estate is entitled to compensation and stated the following:
 
 
 30
 On its face, section 1983 does not answer this question. Because section 1983 is "deficient" in this respect, 42 U.S.C. Sec. 1988 requires the Court to apply "the common law, as modified and changed by the constitution and statutes of the [forum] State ... so far as the same is not inconsistent with the Constitution and laws of the United States." The Supreme Court has read section 1988 to require the adoption of state law as "the principal reference point in determining survival of civil rights actions." Robertson v. Wegmann, 436 U.S. 584, 589-90 [98 S.Ct. 1991, 1994-95, 56 L.Ed.2d 554] (1978). The Court must apply state law, in fact, unless it is inconsistent with the policies underlying section 1983. Id. The Supreme Court has also suggested that state tort law is useful in determining section 1983 damages. Carey, 435 U.S. at 257-58 [98 S.Ct. at 1049].
 
 
 31
 The district court was correct in this statement of the law. That is the holding of Brazier v. Cherry, 293 F.2d 401 (5th Cir.), cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961).[2] Brazier was a wrongful death action based upon a deprivation of the decedent's constitutional rights and damages were sought under Sec. 1983. Our predecessor court held that:
 
 
 32
 To make the policy of the Civil Rights Statutes fully effectual, regard has to be taken of both classes of victims [the victim himself and his survivors]. Section 1988 declares that this need may be fulfilled if state law is available. Georgia has supplied the law.
 
 
 33
 293 F.2d at 409; see also McQurter v. City of Atlanta, 572 F.Supp. 1401, 1422-23 (N.D.Ga.1983) (following Carey and applying Sec. 51-4-1(1) in awarding damages under Sec. 1983 to the widow of man killed by police in Georgia), appeal dismissed, 724 F.2d 881 (11th Cir.1984).
 
 
 34
 The district court in its first opinion stated that if the decedent had been survived by a wife or child, those persons could have sought damages under then Sec. 105-1302,[3] but since the decedent left neither widow nor child, his estate was not entitled to a cause of action and the decedent's estate was foreclosed from collecting damages for his wrongful death. Having no objective measure of damages to apply, the district court concluded that "$20,000 would be adequate compensation" for the deprivation of Patillo's constitutional rights.
 
 
 35
 In the court's second order, dated August 6, 1982, in response to the estate's motion to alter or amend the judgment, the court acknowledged that it had previously relied on Sec. 105-1302 creating an action for wrongful death by a decedent's widow or child and that "the court was not aware that this limitation on the cause of action had effectively been removed by Sec. 105-1309 [now 51-4-5(a) ]."
 
 
 36
 Nonetheless, the district court went on: "It does not necessarily follow that the court must employ state law regarding the amount of damages, however." (emphasis in the original). The district court referred to Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), and stated that Carey holds that where there is an analogue in state law for determining the proper measure of damages under Sec. 1983, "it may be appropriate to apply the tort rules of damages directly to the Sec. 1983 action. 435 U.S. at 258 [98 S.Ct. at 1049]." (emphasis added by district court). The district court decided that since Patillo's next of kin did not depend on him for financial support,
 
 
 37
 the full value of Patillo's life would overcompensate them for their financial loss. Therefore, it is proper for the court to award some lesser amount. The court has not changed its opinion that $20,000 would adequately compensate Patillo's estate for the civil rights violation he suffered at the hands of Sampson.
 
 
 38
 Order of August 6, 1982 at 4.
 
 
 39
 The district court chose a week reed in Carey to lean upon when deciding that it did not have to follow Georgia law. Carey states the law very clearly:
 
 
 40
 It is not clear, however, that common-law tort rules of damages will provide a complete solution to the damages issue in every Sec. 1983 case. In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right. In such cases, it may be appropriate to apply the tort rules of damages directly to the Sec. 1983 actions. See Adickes v. S.H. Kress & Co., 398 U.S. at 231-232, 90 S.Ct. [1598] at 1641, 26 L.Ed.2d 142 (Brennan, J., concurring and dissenting). In other cases, the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law torts.
 
 
 41
 435 U.S. at 258, 98 S.Ct. at 1049. In Carey the Supreme Court was faced with the problem of how to set a standard for recovery of damages by students who were suspended from public elementary and secondary schools without procedural due process. That factual context led the court into a discussion of Sec. 1983 cases that are analogous to common law tort actions and those that are not analogous, such as suspending students from school.
 
 
 42
 The third district court order after remand of this case on certain liability issues is dated December 23, 1986 and is the order now on appeal. The court addressed Gilmere's motion to reconsider the $20,000 wrongful death award and denied it with this statement: "While the beating and shooting violated both Patillo's substantive due process rights and Fourth Amendment rights, plaintiff can receive compensation only for the injuries incurred as a result of these actions."
 
 III. THE MAJORITY OPINION
 
 43
 The majority opinion joins the district court in repudiating 42 U.S.C. Sec. 1988, binding circuit authority, and Supreme Court cases that dictate application of state law when assessing damages in Sec. 1983 cases where federal law or policy neither controls nor conflicts and state law provides an analogue. Additionally, the majority joins the district court in not even mentioning the Supreme Court cases that require consideration of deterrence as an element of damages in Sec. 1983 cases. Yet the most grievous part of the majority opinion is its result: there is now no law in the Eleventh Circuit governing assessment of damages in a Sec. 1983 wrongful death case.
 
 1. Failure To Provide Standards
 
 44
 The majority's creation of a void in the law with respect to damages in Sec. 1983 cases is accomplished with the following language:
 
 
 45
 The focus of any award of damages under Sec. 1983 is to compensate for the actual injuries caused by the particular constitutional deprivation. Memphis Community School District v. Stachura, 477 U.S. 299, 106 S.Ct. 2537, 2544, 91 L.Ed.2d 249 (1986). The amount of damages to be awarded should be grounded in a determination of the plaintiff's actual losses. Id. The Supreme Court has stated that Sec. 1983 remedies are "supplementary to any remedy any State might have," and "have no precise counterpart in State law." Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 1945, 85 L.Ed.2d 254 (1985) (citations omitted). The Court added that "it is 'the purest coincidence' ... when state statutes or the common law provide for equivalent remedies...." Id. (citations omitted). Thus, there is no requirement that a state remedy be employed to compensate for a violation of a federal interest. In fact, the Court has noted that under Sec. 1988, "resort to State law ... should not be undertaken before principles of federal law are exhausted." Id. at 268, 105 S.Ct. at 1943, 85 L.Ed.2d 254.
 
 
 46
 Federal law provides for compensation for injuries caused by a constitutional deprivation, Stachura, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249, and allows the imposition of punitive damages even in cases where such recovery may not be made under state law. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The courts are charged with the duty of evaluating the principles of damages which have evolved within the common-law and fashioning a remedy appropriate to the injury.
 
 
 47
 Maj.Op. at 739.
 
 
 48
 The majority thus relies upon extraneous language in Wilson for its holding that: "there is no requirement that a state remedy be employed to compensate for a violation of a federal interest." Wilson, however, had as its only issue the determination of which statute of limitations would govern the Sec. 1983 action (and, ironically, the Court did turn to state law). Damages were not an issue. In describing the Tenth Circuit's holding in Wilson, the Supreme Court stated:
 
 
 49
 Distilling the essence of the Sec. 1983 cause of action, the court held that every claim enforceable under the statute is, in reality, "an action for injury to personal rights," and that "[h]enceforth, all Sec. 1983 claims in [the] circuit will be uniformly so characterized for statute of limitations purposes." Id. [Garcia v. Wilson, 731 F.2d 640] at 651 [ (1984) ]. Accordingly, the appropriate statute of limitations for Sec. 1983 actions brought in New Mexico was the 3-year statute applicable to personal injury actions.
 
 
 50
 471 U.S. at 265, 105 S.Ct. at 1941 (footnote omitted).
 
 
 51
 If by its reference to Wilson the majority means that the federal courts are not required to follow the decisions of state courts with respect to a remedy, the majority would be correct. For example, if Georgia law provided that a plaintiff could recover only nominal damages for a wrongful death, it is obvious that the federal courts could disregard that state's statute. There is an immense difference, however, between determining that a state's remedy is wholly inadequate and selectively excising those parts of a state's damages rule that, on a particular occasion, a court may find distasteful.
 
 
 52
 More importantly, the fact remains that there is no federal damages law on which the district court might have relied, and Wilson makes clear that state law governs in such a situation. As the Court stated in Wilson:
 
 
 53
 The language of Sec. 1988 directs the courts to follow "a three-step process" in determining the rules of decision applicable to civil rights claims:
 
 
 54
 "First, courts are to look to the laws of the United States 'so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect.' [42 U.S.C. Sec. 1988.] If no suitable federal rule exists, courts undertake the second step by considering application of state 'common law, as modified and changed by the constitution and statutes' of the forum state. Ibid. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not 'inconsistent with the Constitution and laws of the United States.' Ibid." Burnett v. Grattan, 468 U.S. , , 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 (1984).
 
 
 55
 This case principally involves the second step in the process: the selection of "the most appropriate," or "the most analogous" state statute of limitations to apply to this Sec. 1983 claim.
 
 
 56
 105 S.Ct. at 1942-43 (footnotes omitted). Had the district court followed this sequence, it would have discovered first that there are no cases setting forth a federal standard for calculating damages; the only wrongful death Sec. 1983 cases in this circuit addressing damages in any respect have applied state law. See Brazier v. Cherry, 293 F.2d 401, 409 (5th Cir.) (Georgia law permits damages awards for both harm to the decedent and injury to the survivors), cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); McQurter v. City of Atlanta, 572 F.Supp. 1401, 1422-23 (N.D.Ga.1983) (following Carey and applying Ga.Code Ann. Sec. 51-4-1(1) in awarding damages under Sec. 1983 to widow of man killed by police), appeal dismissed, 724 F.2d 881 (11th Cir.1984). Once the court had made this determination, the only reason for which it might have rejected Georgia law is if, as Wilson dictates, the Georgia law is " 'inconsistent with the Constitution and laws of the United States.' " 471 U.S. at 267, 105 S.Ct. at 1942-43 (quoting Burnett v. Grattan, 468 U.S. at 49, 104 S.Ct. [at] 2929). In short, the majority's statement that "[f]ederal law provides for injuries caused by a constitutional deprivation" is misleading--sections 1983 and 1988 merely authorize damage awards without directing how they should be calculated--and the district court should thus have turned to state law, specifically, Ga.Code Ann. Sec. 51-4-5.
 
 
 57
 In addition to its general reliance on broad, and inapplicable, statements by the Supreme Court, the majority offers two responses to this argument. First, the majority eschews any reliance whatsoever on Brazier, pointing out that in Brazier, the plaintiffs were seeking damages not only for the injury to their decedent, but for the injury to themselves, while in this case the plaintiff sought damages only for the harm to the decedent. Given that the district court here justified its minuscule award on the fact that the decedent's sister would be overcompensated, I find this distinction quite ironic and wholly inappropriate. Second, the majority complains that relying on state law is unsound as a policy matter because such reliance will mean that plaintiffs in one state can recover more than plaintiffs in another. What the majority fails to realize is that these state-to-state distinctions are already made, whether wisely or not, with respect to such rules as statutes of limitations. Compare Jones v. Preuit & Mauldin, 763 F.2d 1250, 1256 (11th Cir.1985) (section 1983 cases in Alabama governed by six-year statute of limitations), with Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir.1986) (section 1983 cases in Georgia governed by two-year statute of limitations). In my view, this may be an unfortunate aspect of the way that sections 1983 and 1988 were drafted, but it does not give this court license to ignore settled interpretations attempting to show states deference in civil rights cases.
 
 
 58
 Finally, even assuming that the majority is correct in asserting that federal law could direct the calculation of damages in Sec. 1983 actions, its greatest mistake is casting the district courts to sea without an anchor. The majority does not set forth any standards for district courts to follow in awarding wrongful death damages in Sec. 1983 actions. Without a standard to determine the amount of damages, the possibility of arbitrariness is increased. Although the trier of fact usually has a good deal of discretion in arriving at an award of damages, its discretion is initially limited by the rules on damages it must heed. Stein, Damages and Recovery, Sec. 248, at 355 (1972). The majority's approach invites completely subjective valuations of human life. Such a result is inconsistent with Sec. 1983. See Stachura, 477 U.S. at 310, 106 S.Ct. at 2545 (arbitrary damages awarded "without any evidentiary basis ... would be too uncertain to be of any great value to plaintiffs, and would inject caprice into determinations of damages in Sec. 1983 cases"). The Supreme Court in Wilson spoke specifically of avoiding such uncertainty:
 
 
 59
 The experience of the courts that have predicated their choice of the correct statute of limitations on an analysis of the particular facts of each claim demonstrates that their approach inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of Sec. 1983. Almost every Sec. 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations.
 
 
 60
 ....
 
 
 61
 We conclude that the statute is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all Sec. 1983 claims. The federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach.
 
 
 62
 471 U.S. at 272-77, 105 S.Ct. at 1945-47 (emphasis added).
 
 2. Failure to Account for Deterrence[4]
 
 63
 The majority also errs in affirming the district court's failure to consider deterrence in awarding Sec. 1983 damages. The Supreme Court has repeatedly held that deterrence is one of the overriding purposes of Sec. 1983. See Stachura, 477 U.S. at 306, 106 S.Ct. at 2543; City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 268-70, 101 S.Ct. 2748, 2760-61, 69 L.Ed.2d 616 (1981); Owen v. City of Independence, 445 U.S. 622, 651-56, 100 S.Ct. 1398, 1416-18, 63 L.Ed.2d 673 (1980). Moreover, the Court recently noted in a Sec. 1983 damages case that compensation and deterrence are mutually dependent rationales: "Deterrence is an important purpose of [the tort] system, but it operates through the mechanism of damages that are compensatory damages grounded in determination of [the] plaintiff's actual losses." Stachura, 477 U.S. at 306, 106 S.Ct. at 2543.
 
 
 64
 By agreeing with the district court that an award in excess of $20,000 would overcompensate Patillo's estate, the majority turns the Court's supposition on its head.
 
 3. Inadequacy of the Award
 
 65
 The award of $20,000 for Patillo's unlawful killing should be reversed because it shocks the conscience, Del Casal v. Eastern Airlines, Inc., 634 F.2d 295, 302 (5th Cir.Unit B 1981), and is inadequate as a matter of law. The award minimizes the value of human life, the most precious right guaranteed by the Constitution. For wrongful death awards in similar Sec. 1983 cases, see, e.g., Bell v. City of Milwaukee, 746 F.2d 1205, 1238-41 (7th Cir.1984) (affirming award of $100,000 in compensatory damages to estate of a 23-year-old unmarried man unlawfully killed by police); McQurter, 572 F.Supp. at 1422-23 (awarding $150,000 in compensatory damages to estate of 25-year-old married man unlawfully killed by police); Roman v. City of Richmond, 570 F.Supp. 1554, 1556-57 (N.D.Cal.1983) (upholding jury award of $1.5 million to the heirs of man unlawfully killed by police); Guyton v. Phillips, 532 F.Supp. 1154 at 1168 (N.D.Cal.1981) (awarding $100,000 in compensatory damages to estate of 14-year-old unmarried man unlawfully killed by police). The inadequacy of the award is highlighted by the fact that it is less than the award of $25,000 we affirmed in Trezevant v. City of Tampa, 741 F.2d 336, 341 (11th Cir.1984), to a man who had been denied medical treatment during his twenty-three minutes of incarceration.
 
 
 66
 As the Supreme Court has recognized, "Sec. 1983 presupposes that damages for actual harm ordinarily suffice to deter constitutional violations." Stachura, 477 U.S. at 309, 106 S.Ct. at 2544. The district court's award of $20,000, by failing to adequately compensate for Patillo's life, turns this assumption on its head and ignores the deterrent value of an award of damages under Sec. 1983.
 
 IV. CONCLUSION
 
 67
 After eight long years of litigation, this Sec. 1983 lawsuit draws to a close. Unfortunately, the district court had an "inverted view of the law," and the ending can only be characterized as "justice turned bottom side up." Anti-Fascist Committee v. McGrath, 341 U.S. 123, 186, 71 S.Ct. 624, 656, 95 L.Ed. 817 (1951) (Jackson, J., concurring). Because the district court erred in not applying Sec. 51-4-1 to determine the damages for Patillo's unlawful killing and because its award of $20,000 was inadequate as a matter of law, I respectfully dissent.
 
 
 
 *
 Honorable Jose A. Gonzalez, Jr., U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 The facts of this case are set out in the prior opinions of this court. See Gilmere v. City of Atlanta, 737 F.2d 894 (11th Cir.1984) on reh'g 774 F.2d 1495 (11th Cir.1985)
 
 
 [2]
 The district court found that Sampson and Craig did commit an assault and battery, but refused to award additional compensation on the ground that it would lead to double recovery for the same injuries on separate theories of recovery
 
 
 [3]
 Georgia law permits recovery of the "full value of the life of the decedent" in actions for wrongful death. Ga.Code Secs. 51-4-5(a) and 51-4-1
 
 
 [4]
 We reiterate that this is not a case in which damages to the survivors are at issue. Had the survivors sought recovery for their injuries as well as for the decedent's injuries, resort to the state wrongful death statute may well be appropriate
 
 
 [5]
 This rule is as applicable to the determination of damages as it is to the determination of the proper statute of limitations in a Sec. 1983 case, which was the issue before the court in Wilson
 
 
 [6]
 See Ala.Code Sec. 6-5-410; Ga.Code Secs. 51-4-1 and 51-4-5; Fla.Stat.Ann. Sec. 768.21
 
 
 [7]
 The Alabama wrongful death statute, Ala.Code Sec. 6-5-410, provides only for assessment of punitive damages. Carter v. City of Birmingham, 444 So.2d 373 (Ala.1983) cert. denied, 467 U.S. 1211, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984). Because the statute is inconsistent with the rule that damages in Sec. 1983 actions are to be compensatory, reliance on the Alabama wrongful death statute would not be proper under Sec. 1988. see Weeks v. Benton, 649 F.Supp. 1297 (S.D.Ala.1986)
 
 
 [8]
 The fee award included $2,880.00 for paralegal work and a 20% enhancement for the contingent nature of the fee arrangement
 
 
 [1]
 51-4-5. Recovery by personal representative for wrongful death and for certain expenses
 (a) When there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51-4-2, 514-3, or 51-4-4, the administrator or executor of the decedent may bring an action for and may recover and hold the amount recovered for the benefit of the next of kin. In any such case the amount of the recovery shall be the full value of the life of the decedent.
 51-4-1. Definitions.
 As used in this chapter, the term:
 (1) "Full value of the life of the decedent, as shown by the evidence" means the full value of the life of the decedent without deducting for any of the necessary or personal expenses of the decedent had he lived.
 Section 51-4-2 relates to wrongful death of a father or husband, 51-4-3 relates to the wrongful death of a wife or mother, and 51-4-4 relates to the wrongful death of a child.
 The "full value of the life of the decedent" is divided into two elements: the gross sum that the decedent would have earned by the end of his life, reduced to present value, and the intrinsic value of the decedent's life. Cobb & Eldridge, Georgia Law of Damages Sec. 37-6, at 672 (2d ed. 1984) (citing cases). Because the measure of damages is the full value of the decedent's life to himself, Atlantic V. & W.R.R. v. McDilda, 125 Ga. 468, 54 S.E. 140, 141 (1906), evidence of the decedent's support for his next-of-kin is irrelevant in determining the economic value of the decedent's life.
 
 
 [2]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (in banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Id. at 1209
 
 
 [3]
 This section was recodified in 1982 as Sec. 51-4-2
 
 
 [4]
 From a review of a sampling of past articles on the subject of police shootings and fatalities in the City of Atlanta (there have been 454 articles since 1973), the Reference Department of the Atlanta Journal-Constitution advises that there were in 1973 50 shootings--19 fatalities; in 1983 15 shootings--6 fatalities; in 1984 3 fatalities; and in 1987 8 or 9 fatalities